IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DAVIDA S. RIEGEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:12-CV-00526 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff, Davida S. Riegel ("Riegel"), filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f. Specifically, Riegel alleges that the ALJ failed to properly consider the combined effect of her alleged impairments and that the ALJ improperly commented upon her ability to afford health insurance.

This court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the arguments of counsel, and the applicable law. I conclude that substantial evidence supports the ALJ's decision and his consideration of the cumulative effect of Riegel's impairments. I further find that the ALJ did not commit error when referencing Riegel's lack of insurance. Accordingly, I **RECOMMEND DENYING** Riegel's Motion for

Summary Judgment (Dkt. No. 11), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 14.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Riegel failed to demonstrate that she was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Riegel bears the burden of proving that she is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in any and all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[1] (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## STATEMENT OF FACTS

### Social and Vocational History

Riegel was born on May 22, 1974 (Administrative Record, hereinafter "R." at 183), and was a younger person on her alleged onset date. 20 C.F.R. § 404.1563(c). Riegel's last insured date is December 31, 2013. R. 230. She must show that her disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). Riegel possesses a two-year associate's degree from community college and is licensed as a certified nursing assistant (CNA). R. 44, 64. In addition to work as a CNA in a nursing home, Riegel worked as a sewing machine operator, a

---

[1] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of her or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

telemarketer, a material handler, and a restaurant cashier. R. 64–65. Riegel continued to work as an in-home personal care aide during the period of alleged disability, which included light housekeeping work, monitoring the patients' activities, and making sure patients took medication. R. 255. Riegel further reported that during the relevant period, she was able to go shopping, manage her own finances, go to the library, read, and spend time with her kids. R. 256–60.

## Claim History

Riegel protectively filed for SSI and DIB on June 25, 2010, claiming that her disability began on April 15, 2010. R. 230. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 101–103, 112–114. On November 28, 2011, Administrative Law Judge ("ALJ") Benjamin R. McMillion held a hearing to consider Riegel's disability claim. R. 39–69. Riegel was represented by an attorney, J.D. Morefield, at the hearing, which included testimony from Riegel and a vocational expert, Gerald K. Wells, Ph.D. R. 40.

On December 7, 2011, the ALJ entered his decision denying Riegel's claims. R. 11–23. The ALJ found that Riegel suffered from the severe impairments of chronic lumbar pain, history of hypoglycemia, fibromyalgia, gastroesophageal reflux disease (GERD), recurrent toothache, stomach herniations, obesity, depression, and anxiety with panic attack. R. 13–14. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 14–16. The ALJ further found that Riegel retained the RFC to perform a range of light work, but "[s]pecifically, the claimant can only occasionally reach overhead; can tolerate only occasional public contact; and can handle no more than simple job instructions." R. 16–21. The ALJ determined that Riegel retained the functional capacity to return to her past relevant work as a sewing machine operator and that she could work at other

4

jobs at similar exertion levels, including office helper, mail room clerk, and order caller. R. 21–23. Thus, the ALJ concluded that she was not disabled. R. 23. On October 3, 2013, the Appeals Council denied Riegel's request for review (R. 1–6), and this appeal followed.

## ANALYSIS

Riegel asserts on appeal that the ALJ's opinion is not supported by substantial evidence in the record. Specifically, Riegel contends that the ALJ erred by failing to consider the cumulative effect of her impairments and improperly relying on the fact that Riegel admitted purchasing cigarettes when discrediting her testimony that she had limited access to health care due to lack of insurance.

### Cumulative Effect of Impairments

Riegel contends that the ALJ's opinion is not supported by substantial evidence because the ALJ failed to consider the combined effect of Riegel's impairments when determining that Riegel was not disabled. I find that the ALJ adequately addressed the cumulative effect of Riegel's impairments on her ability to work, and that the decision to deny benefits is supported by substantial evidence.

The social security regulations and Fourth Circuit cases make clear that where a claimant has multiple impairments, the ALJ must consider the combined effect of those impairments in determining whether the claimant is disabled. 20 C.F.R. § 404.1523; Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989). "It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render [a] claimant unable to engage in substantial gainful activity." Walker, 889 F.2d at 50. In addition to "not fragmentiz[ing]" the effect of the claimant's impairments, "the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." Id. at 50 (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir.1985)). "The ALJ's duty to consider

5

the combined effect of Plaintiff's multiple impairments is not limited to one particular aspect of its review, but is to continue 'throughout the disability process.'" Mazyck v. Astrue, CA 8:10-2780-TMC, 2012 WL 315648, at *2 (D.S.C. Feb. 1, 2012) (citing 20 C.F.R. § 404.1523).

The sum and substance of Riegel's claim is that she is unable to work because of chronic pain, fatigue, and anxiety and mood disorders. In this case, the record reflects that the ALJ sufficiently considered the cumulative effects of these impairments throughout the disability evaluation analysis. The ALJ considered Riegel's impairments in combination when determining that the impairments did not rise to the level of a listed impairment under the regulations. R. 14–15. Furthermore, the ALJ evaluated Riegel's impairments in a holistic manner when determining Riegel's RFC. R. 16–21. The ALJ discussed Riegel's work hours after the alleged onset date, daily activities, history of treatment, and lack of doctor-imposed work restrictions, all facts that speak towards Riegel's ability to work despite her combination of alleged physical and mental impairments. The ALJ also noted that generalized chronic pain, as alleged by Riegel, is often accompanied with other measurable physiological manifestations that were not present in Riegel's case. R. 20. The ALJ did not "fragmentize" Riegel's impairments, but considered together their impact on Riegel's ability to work. Although the ALJ was not explicit in considering cumulative effect of Riegel's impairments, the decision reflects a proper analysis as contemplated under the regulations.

Even if the ALJ was not as clear as he should have been when considering Riegel's combination of impairments in his opinion, "'[p]rocedural perfection in administrative proceedings is not required' and courts should not vacate a judgment unless the substantial rights of a party have been affected." Cameron v. Astrue, 7:10CV00058, 2011 WL 2945817 at *3 (W.D. Va. July 21, 2011) (citing Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir.1988)). "Thus,

remand is appropriate only when substantial evidence to support the ALJ's decision does not exist." Cameron, 2011 WL 2945817 at *3 (citations omitted).

Here, ample evidence in the record supports the ALJ's decision to deny benefits, and remand is not warranted. There is an absence of objective medical findings supporting Rigel's alleged disability and Riegel's ability to work and perform daily activities during the relevant period weigh significantly against her subjective complaints of disabling impairments.

Riegel's medical history shows a history of chronic back pain, hypoglycemia, fibromyalgia, gastroesophaegeal reflux disease, abscess teeth, and stomach hernias. In June 2010, Riegel saw nurse practitioner, Martha L. Larmer, for complaints of tooth ache, fatigue, work-related back pain, and right foot pain and numbness. R. 464. Nurse Larmer noted during tests Riegel's slight discomfort in her back, but noted that Riegel had a normal gait and was able to get up and down from the exam table without assistance. Nurse Larmer ordered x-rays of Riegel's foot, which returned normal. R. 467. Nurse Larmer recommended adjusting Riegel's sleep position, taking over-the-counter pain medicine, seeing a dentist, losing weight, and a healthier diet R. 464. However, Nurse Larmer did not impose any work restrictions.

On October 11, 2010, Riegel saw Nurse Practitioner Kimberly Leftwich at the Twin County Free Clinic for complaints of headaches, abscessed teeth, severe back pain, unexplained weight gain, fluctuating blood pressure, and panic attacks. R. 477. Nurse Leftwich diagnosed Riegel with chronic pain, potentially fibromyalgia, and anxiety. Reigel was prescribed Neurontin for Riegel's chronic pain and Buspar for her anxiety, as well as ordered lab work. At her follow up visit with Nurse Leftwich on November 1, 2010, Riegel complained of bone and joint pain, abscessed teeth, and acid reflux. R. 476. Riegel reported that her pain medicine was helping "a little bit" but that her neck, back, shoulders, elbows, hips, and knees hurt. R. 476. Riegel stated that there was not much pain in her hands and feet at that time. Reigel denied depression, and

7

stated that she loved her job but "physically can't work more than a few hours a day." R. 476. Riegel was prescribed an antibiotic and more pain medicine, and was referred to a rheumatologist after the visit.

Riegel went to the Free Clinic again on December 10, 2010, reporting that her pain and anxiety had worsened. R. 489. Riegel stated that the Neurontin helps some with her leg pain, but that the pain persists in other parts of her body. Riegel also stated that the Burspar had made her anxiety worse. Nurse Leftwich diagnosed Riegel with chronic pain and mood disorder, prescribed Meloxicam, Flexeril, and Paxil, and ordered x-rays of her spine and knees. R. 489. The x-ray of Riegel's back showed "good vertebral alignment throughout" with "no evidence of acute fracture or subluxation" and soft tissue with normal appearance. R. 490. The x-rays of both knees showed no fracture or dislocation, "grossly normal" soft tissue, and no bony abnormalities. R. 491–92.

Riegel's only visit to a specialist documented in the record occurred on January 4, 2011, when she saw rheumatologist William Gruhn, M.D. R. 483–84. Records from the visit show that Riegel complained that her elbows, knees, wrists, and hips were still and sore and that it was difficult for her to sit or stand for extended periods of time. R. 483. A physical exam by Dr. Gruhn was unremarkable, with the exception of the finding of tender points on Riegel's neck, shoulders, lower back, and thighs. Dr. Gruhn noted that Riegel had a normal gait, normal range of motion in her back, normal deep tendon reflexes, and no joint swelling or limitation of motion. R. 483. Dr. Gruhn diagnosed Riegel with chronic pain and fibromyalgia, as well as depression and situational stress. Dr Gruhn continued Riegel on her current program of medication, and stated that she needed to walk on a regular basis and have regular relaxation. R. 483. Dr. Gruhn also gave Riegel instructions on how to perform back exercises. R. 484.

8

Following the visit to Dr. Gruhn, Riegel returned to see Nurse Leftwich at the Free Clinic on February 24, 2011 after complaining of blood sugar problems, tingling in her hands, and increased urination. Riegel's physical exam was entirely normal and she reported that her anxiety and impression had improved with medication. R. 488. Nurse Leftwich diagnosed Riegel with a urinary tract infection, GERD, fibromyalgia, mood disorder, and elevated glucose levels. Nurse Leftwich prescribed medication and recommended daily exercise and weight loss. R. 488. Again, no work limitations were placed on Riegel.

Riegel made two visits to the Free Clinic in March 2011, this time seeing Nurse Practitioner James Deboe for more complaints of fatigue and weakness. R. 486–87. Nurse Deboe recommended Riegel quit smoking, eat healthier and adjusted Riegel's medication. R. 486–87. The next month Riegel saw Nurse Leftwich, and Riegel had an entirely normal physical exam, although Riegel had allergy symptoms. R.485. When Riegel reported that her Zantac was not helping with her GERD symptoms, Nurse Leftwich prescribed Nexium instead.

Riegel did not seek treatment again until August 10, 2011, when she again saw Nurse Leftwich at the Free Clinic for excessive diarrhea. R. 506. Riegel's physical exam was entirely normal. Riegel reported that that her anxiety and depression had worsened and that the diarrhea worsened when she was nervous or upset. At a follow up visit on October 18, 2011, Riegel complained of continued acid reflux and diarrhea, and that her medication prescribed had not helped with symptoms. R. 505.

After feeling sharp neck pain when getting out of bed on October 23, 2011, Riegel went to the emergency room and radiologists conducted a CT scan of her cervical spine. R. 495–97. Prior to the CT scan, Riegel was diagnosed with an acute cervical strain. Results of the CT scan however showed no acute abnormality, with no evidence of soft tissue swelling, maintained vertebral alignment, no fractures or bodies, and no significant degenerative changes. R. 497.

9

As far as opinions of Riegel's functioning, the only assessments in the record come from consulting state agency physicians. Thomas M. Phillips, M.D. found Riegel's spine disorders nonsevere on August 4, 2010. R. 73–78. Shirish Shahane, M.D. came to an identical conclusion December 30, 2010. R. 87–93.

This medical record fails to corroborate Riegel's subjective complaints of disabling pain and mood disorder and it was appropriate for the ALJ to discredit Riegel's testimony. On the whole, Riegel's treatment records do not provide independent support to her claim, as they do little more than memorialize her subjective complaints. The fact that medical practitioners documented Riegel's subjective complaints in their treatment notes during her visits does not transform those complaints into clinical evidence. See Webb v. Astrue, 2:11-CV-103, 2012 WL 3061565, at *17 (N.D.W. Va. June 21, 2012) (citing Craig v. Chater, 76 F.3d 585, 590 n.2 (4th Cir. 1996)). Disregarding these memorialized subjective complaints leaves the record barren, with little evidence of objective symptoms of her alleged impairment causing actual functional limitations. Riegel's treatment was conservative, and medical providers sought to manage her ailments through routine medication and lifestyle changes. Riegel never saw a mental health specialist and was never hospitalized for any mental health problems. At no point did doctors explicitly impose work-specific limitations for either her alleged physical or mental impairments. The most objective medical evidence comes in the form of imaging studies of Riegel's back and knees from June 2010, December 2010, and October 2011. R. 467, 490, 497. On each occasion the imaging studies revealed no significant abnormalities, greatly undermining Riegel's claim.

Notably, there are no medical source statements of disability from a treating source. The piece of evidence closest to an opinion of disability is the treatment note from Dr. Gruhn stating that Riegel needed "regular relaxation." R. 483. Although Dr. Gruhn was a specialist in rheumatology, he examined Riegel only once and there is little substantiation in the notes from

the visit. "Regular relaxation" does not translate into an inability to perform any work in the national economy. Simply put, Dr. Gruhn's treatment note is not enough by itself to establish disability under the Act in light of the remaining record. Moreover, the only functional assessments, performed by state agency physicians, found Riegel not disabled. R. 73–78, 87–93.

Further undermining Riegel's claim is the fact that she continued to work significant hours more than a year after the date of alleged onset of disability. See, e.g., Childers v. Astrue, 1:09CV225, 2012 WL 1267897, at *10 (M.D.N.C. Apr. 16, 2012) ("Plaintiff's continued work…long after her alleged onset date, documented throughout the record … represents the most significant evidentiary conflict."). Riegel testified that she continued to work as a CNA in through July 5, 2011. R. 45–46. Shortly after her alleged onset date, Riegel stated that she worked approximately 52 hours per week, gradually cutting back to 36, 25, and 20 hours a week into the summer of 2011. R. 46, 57. The vocational expert testified at the hearing that her work as a CNA was performed at a level "more than medium exertion." R. 64. This history of continued work supports the ALJ's finding that Riegel's symptoms were not as severe as alleged during the relevant period and that Riegel retained the ability to perform light work. Furthermore, the record shows that Riegel continued to perform a number of daily activities, such as grocery shopping and caring for her children that suggest that her impairments rendered her unable to perform any work. R. 255–60.

Even in light of the lack of objective evidence supporting Riegel's claim, the ALJ crafted an RFC that accounted for her alleged impairments, both physical and mental. The RFC limited Riegel to light work, with the additional limitations of only occasionally reaching over head, only occasionally having public contact, and handling no more than simple job instructions. This RFC sufficiently accommodates Riegel's impairments supported in the record. In light of the

lack of objective medical evidence and Riegel's continued ability to work well into the alleged disability period, I find that the ALJ's decision is supported by substantial evidence.

### Improper Reliance on Evidence

Riegel also alleges that the ALJ erred by improperly referencing Riegel's lack of insurance in support of the denial of benefits, and that this is cause for reversal or remand. In the portion of the ALJ's opinion addressing Riegel's residual functional capacity, the ALJ stated that "[t]he claimant testified that she has been limited in the care she receives because she does not have insurance. Nevertheless, she has admitted to purchasing and smoking cigarettes despite being advised to quit." R. 20 (citations omitted).

Riegel is correct in that "[a] claimant may not be penalized for failing to seek treatment she cannot afford." Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986). This is because "[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him." Id. at 1117 (quoting Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir.1984)).

However, Lovejoy and its progeny do not in any way preclude the ALJ from considering inconsistencies in the record that undermine Riegel's credibility. That is what the ALJ did in this case. The record supports the ALJ to the extent that Riegel was advised to stop smoking, yet continued to smoke cigarettes. R. 485–86, 505–06. In attempting to explain the lack of treatment in the record, Riegel testified that she did not have insurance. R. 60. The fact that Riegel continued to smoke cigarettes contrary to doctors' orders to cease undermines the credibility of Riegel's explanation. Riegel was not penalized by the ALJ for her lack of insurance; she was penalized because of this inconsistency in the evidence. See Blankenship v. Astrue, CIV.A. 5:07-00685, 2009 WL 899426, at *8 (S.D.W. Va. Mar. 30, 2009) (fact that claimant was "able to afford a nicotine habit at a pack of cigarettes per day" undermined claimant's credibility).

Moreover, given that the ALJ's opinion was well supported by substantial evidence in the record, any error that the ALJ may have committed in referencing Riegel's lack of resources would be harmless. Id. at *8. Accordingly, I find that reversal is not warranted on these grounds.

## Conclusion

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Samuel G. Wilson, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: January 21, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge